141 F.3d 1178
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Manuel PARRA; Vivian Parra; Manuel Parra, Jr.; Roseann
Parra; Margaret Parra; Francisco Parra,
Plaintiffs-Appellants,
v.
City of Chino; James Anthony; Roger Planas, # 719; Ron
Vallejo, # 688; Jeff Allison, # 716; Charles Sample, #
467; Danny Ross Lamaster; Kevin Devey, in both their
personal and official capacities, Defendants-Appellees.
Manuel PARRA; Vivian Parra; Manuel Parra, Jr.; Roseann
Parra; Margaret Parra; Francisco Parra,
Plaintiffs-Appellees,
v.
City of Chino; James Anthony; Roger Planas, # 719; Ron
Vallejo, # 688; Jeff Allison, # 716; Charles Sample, #
467; Kevin Devey, in both their personal and official
capacities, Defendants-Appellants.
 No. 96-55218, 96-55271.
D.C. No. CV-94-00003-RT(JRx).
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 7, 1998.
Decided Mar. 2, 1998.
 
 Appeal from the United States District Court for the Central District of California Robert J. Timlin, District Judge, Presiding.
 Before LAY,** GOODWIN and SCHROEDER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Manuel Parra Sr. brought a § 1983 action against the city of Chino and several of its police officers for using excessive force to arrest him. On February 14, 1991, officers went to Parra's home to execute a felony arrest warrant. Mrs. Parra told the officers that her husband would come to the door in a moment and closed the screen door. The officers then broke the screen in the door, entered the house and searched for Parra. Not finding him, officer Planas searched the house again with a police dog. Planas took the police dog into the family's bathroom where Parra's nine-year old daughter was taking a shower. During this time, officer Allison took Parra's six-year old son outside the house and patted him down for weapons. AER at pp. 147-48.
 
 
 3
 Planas and Devey then searched the backyard area and saw Parra attempting to flee. After instructing Parra to stop, the officers released the police dog and gave the dog a "search" command. The dog found Parra, bit him in the foot and pulled Parra off a truck. While Parra struggled with the dog, the dog bit him five times in the arm, leg and foot. At the same time, Planas hit Parra several times on the back and buttocks with his baton. The incident lasted twenty to twenty-five seconds. Once Parra was subdued, Planas commanded the dog to release its bite, and it released Parra.
 
 
 4
 Parra brought a § 1983 action against the City of Chino, Chief of Police James Anthony and officers Roger Planas and Kevin Devey, claiming the police officers used unnecessary and unreasonable force in arresting him. Parra also sued Dan LaMaster, who trained the police officers to handle police dogs, claiming inadequate training caused, in part, Parra's injuries. Parra's children brought a § 1983 claim against the City of Chino, Police Chief Anthony and the police officers claiming a violation of their Fourth Amendment rights.
 
 
 5
 The trial court granted LaMaster's motion for summary judgment, finding that LaMaster was entitled to a "good faith" defense. AER at p. 325. The court also granted the city's motion for summary judgment to dismiss the Fourth Amendment claims brought by Parra's children, finding that the searches of the Parra house and the youngest child, Francisco, were reasonable. Id. at pp. 328-29. The jury trial was bifurcated into two liability stages. In the first stage, the jury considered only the liability of officers Devey and Planas. It found the officers did not violate Parra's constitutional rights and returned a verdict in their favor. Thereafter, based upon the jury's answer to the special verdict form that Parra was not subjected to unreasonable force during the course of his arrest on February 14, 1991, the court dismissed the case as to all defendants.
 
 I.
 
 6
 Parra initially appeals the summary judgment dismissal of his claim against LaMaster. To state a claim for relief under § 1983, a plaintiff must establish: (1) the defendant acted under color of state law; and (2) the defendant caused him to be deprived of a right secured by the Constitution and laws of the United States. Johnson v. Knowles, 113 F.3d 1114, 1117 (9th Cir.1997) (citing Howerton v. Gabica, 708 F.2d 380, 382 (9th Cir.1983)). Parra claims that LaMaster trained Chino police officers to use dogs to attack and bite unreasonably. Parra asserts that LaMaster trains the police to allow the dogs to continue to pursue an individual as long as the individual-arrestee is "fighting, trying to get away ...." Thus, Parra claims LaMaster violated his right to defend himself against a dog's attack.
 
 
 7
 This court has implicitly recognized that there is no such constitutional or federal right to defend oneself against a dog attack. Quintanilla v. City of Downey, 84 F.3d 353, 354, n. 1 (9th Cir.1996) ("Plaintiff also argues that the district court erroneously refused to instruct the jury with regards to self-defense. We summarily dispose of this contention because it has no basis in the law, and is therefore without merit."). We conclude Parra failed to establish a § 1983 case against LaMaster because he has not identified a constitutional or federal right LaMaster has allegedly violated.[1] Under the circumstances, we need not pass upon whether LaMaster enjoyed a good faith defense.
 
 II.
 
 8
 Parra's children brought a § 1983 claim against the City of Chino, Chief Anthony and the first line officers for violating their Fourth Amendment rights against unreasonable searches and seizures. The children allege their rights were violated by: (1) unlawful entry into their home; (2) unreasonable searches inside their home; (3) the presence of the police dog in the bathroom while Parra's nine-year old daughter was taking a shower; and (4) an unreasonable search Parra's six-year old son. The district court dismissed the children's claims, finding that the manner of entry into the Parras' home and the searches conducted therein were reasonable. AER at pp. 328-29. The district court also concluded that the searches were justified and necessary to make sure there were no weapons on the premises, and the defendant officers were therefore entitled to qualified immunity. Id. at p. 329.
 
 1. Entry Into the House
 
 9
 While an arrest warrant founded upon probable cause implicitly conveys limited authority to enter a dwelling where the police have reason to believe the suspect lives (Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)), police must knock and announce their presence and purpose before entering a dwelling by force. 18 U.S.C. § 3109 (1994); Cal.Penal Code § 1531 (1982). A failure to knock and announce constitutes a violation of the Fourth Amendment. United States v. Becker, 23 F.3d 1537, 1541 (9th Cir.1994).
 
 
 10
 In the instant case, police officers knocked on the Parras' front door, announced their presence and told Mrs. Parra they were looking for Mr. Parra. Mrs. Parra told the officers Mr. Parra would be right out, and then closed and apparently locked the screen door. At that point, one of the officers pushed his hand through the screen and opened the door. The officers knew Parra had previously fled from police, and had reason to believe that Parra would resist arrest again. Based on these facts, the officers satisfied the knock and announce requirement. Furthermore, the forceful entry made by the police officers after the knock and announcement substantially complied with the requirements of Cal.Penal Code § 844.[2]
 
 2. Searches Conducted Inside the House
 
 11
 Parras' children contend the officers' search of kitchen cupboards and drawers, and their search of the house with the police dog, exceeded the scope of the arrest warrant. They also argue the search of the bathroom with the dog while Parra's daughter was taking a shower was unreasonable.
 
 
 12
 An arresting officer may, upon reasonable suspicion, conduct a "protective sweep" of premises, incident to arrest, for the purpose of protecting the safety of the officers. Maryland v. Buie, 494 U.S. 325, 327, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). The defendants admit that the officers searched the kitchen drawers, but state that "the officers only looked in areas where a gun could be easily concealed and used by Mr. Parra in a surprise attack." (City of Chino's Brief at p. 57). We find this search was reasonable in light of the circumstances.
 
 
 13
 Furthermore, officer Planas' search of the home with the police dog appears justified. The police were executing a valid felony arrest warrant, could not find Parra in the house with a visual inspection, and thus used the dog to search for Parra. The search of the bathroom in which Parra's daughter showered, while unfortunate, also appears reasonable. The officers testified they did not believe Mrs. Parra when she said her daughter was taking a shower because they knew Mr. Parra would hide or flee from them. They therefore could have reasonably suspected that Parra was in the bathroom. In conclusion, we find the searches conducted within the Parra home were reasonable.
 
 3. Pat Down Search of Francisco Parra
 
 14
 The Parras' contend, and the defendants concede, that officer Allison told six-year old Francisco to step outside the house with him and gently patted his waist and hips to make sure he was not carrying a weapon. The defendants describe this frisk as part of their protective sweep of the area, conducted for the purpose of ensuring the officers' safety.
 
 
 15
 "When the police ... have a reasonable suspicion that a suspect is armed, a Terry pat down for weapons is permissible." United States v. Flippin, 924 F.2d 163, 166 (9th Cir.1991). Police may also conduct Terry frisks of third parties found in or around a residence. See United States v. Patterson, 885 F.2d 483, 484-85 (8th Cir.1989); United States v. Bonds, 829 F.2d 1072, 1075 (11th Cir.1987). A Terry frisk constitutes a search, but is reasonable if the officer has a reasonable suspicion that the person may be carrying a weapon. United States v. Thomas, 863 F.2d 622, 628 (9th Cir.1988).
 
 
 16
 We find the frisk of Francisco did not constitute an unreasonable search. The officers justifiably believed Parra was a dangerous felon, and their apprehension in the Parra home was warranted. Moreover, officer Allison's patdown of Francisco was very minor; the officer merely ran his hands over the boy's hips and pockets. We therefore affirm the district court's grant of summary judgment in favor of the defendants.
 
 III.
 
 17
 Parra challenges the district court's denial of his motion for judgment as a matter of law. Parra argues there was insufficient evidence to support the jury's verdicts in favor of the defendant officers. We review a denial of a motion for judgment as a matter of law de novo. McClaran v. Plastic Industries, Inc., 97 F.3d 347, 354 (9th Cir.1996). In reviewing a denial of a motion for judgment as a matter of law, we will reverse a jury's verdict only "if the evidence, construed in the light most favorable to the non-moving party, allows only one reasonable conclusion and that conclusion is contrary to that reached by the jury." Acosta v. City of San Francisco, 83 F.3d 1143, 1145 (9th Cir.1996).
 
 
 18
 Parra first contends no reasonable jury could conclude that the use of the dog and the baton against him did not constitute deadly force,[3] i.e. force that could cause death or serious bodily injury. What constitutes deadly force depends on the object's capacity, in the manner of its use, to endanger one's life, not the nature of the object itself. United States v. Moore, 846 F.2d 1163, 1166 (8th Cir.1988). The defendants submitted evidence that Munko, the police dog that bit Parra, was a friendly, even-tempered and highly trained dog. RT at pp. 386, 377, 379, 380. Munko had been trained to search for a suspect and bark upon finding him. Id. at pp. 288, 361. The dog was also trained to "bite and hold" when a suspect acts aggressively or tries to flee. Id. at p. 274. In this incident, Munko continued to bite Parra only while Parra tried to flee. Id. at pp. 292-93, 295-96. Upon receiving the release command, Munko immediately released his hold of Parra. Id. at pp. 416-17. Based on this evidence, we find a reasonable jury could conclude that this particular use of a police dog did not constitute deadly force.
 
 
 19
 Assuming deadly force was not used in this case, we then consider whether the jury could reasonably conclude that Planas' use of Munko and his baton under the circumstances did not constitute unreasonable force. The defendants offer the following facts to show that the force used was not unreasonable: (1) the officers knew that weeks earlier Parra had broken into a house with a loaded gun and hid in a closet; (2) the officers were executing a felony arrest warrant and were concerned that Parra would be armed and would endanger the public; (3) the officers saw Parra attempt to flee from the backyard; (4) the officers told Parra the dog would be called off if Parra stopped struggling; (5) Planas decided to let Munko continue biting Parra and to use his baton on Parra because he thought Parra might have been armed; and (6) Munko released his hold immediately upon command.
 
 
 20
 Based on this evidence, it appears a reasonable jury could have concluded that the force used was reasonable. If the jurors believed that Planas thought Parra could have been armed and dangerous, and that Parra's flailing during the incident was an attempt to flee rather than an attempt to defend himself, then the jurors could also reasonably conclude that Planas took appropriate action under the circumstances. The fact that Parra, as a convicted felon, possessed a firearm and broke into a house only weeks earlier could have justified Planas' belief that Parra could be dangerous. We conclude there was sufficient evidence to support the jury's verdict, such that the district court's denial of Parra's motion for judgment as a matter of law was proper.
 
 IV.
 
 21
 Parra appeals the denial of his motion for a new trial. Parra alleges the district court erred by: (1) refusing to give his jury instructions Nos. 1 and 49 to the jury; (2) making several evidentiary rulings in favor of the defendants; and (3) bifurcating the trial. We review a denial of a motion for a new trial for clear abuse of discretion. Rinehart v. Wedge, 943 F.2d 1158, 1159 (9th Cir.1991).
 
 
 22
 1. Refusal of Jury Instructions Nos. 1 & 49.
 
 
 23
 A failure to instruct on an appropriate theory of the case is a question of law reviewed de novo. Stewart v. Ragland, 934 F.2d 1033, 1042 (9th Cir.1991). In reviewing jury instructions, this court "consider[s] the charge as a whole to determine whether it is misleading or misstates the law to the prejudice of the objecting party." Jenkins v. Whittaker Corp., 785 F.2d 720, 730 (9th Cir.1986).
 
 
 24
 In Vera Cruz, this court held that: "To be entitled to a deadly force instruction, a plaintiff must present evidence that the force used, in the circumstances under which it was used, posed more than a remote possibility of death." 126 F.3d at 1217. In Quintanilla, this court found that the evidentiary record could not support a deadly force jury instruction because: (1) the plaintiff did not suffer life threatening injuries or require significant medical treatment; (2) the dog was trained to release on command and did release when commanded; and (3) there was no evidence presented of the dog's capacity to harm. 84 F.3d at 358.
 
 
 25
 While Parra's injuries were slightly more severe than Quintanilla's injuries, this case is factually similar to the facts of Quintanilla. Munko was trained to release upon command and did in fact release Parra immediately after the command was given. Furthermore, as discussed above, the evidence showed Munko was a well-trained, well-behaved dog with little propensity to be unduly aggressive. We therefore conclude Parra was not entitled to his deadly force instruction.
 
 
 26
 The district court also refused to give Parra's instruction No. 49, which contained a lengthy definition of "serious bodily injury." Parra argues the district court's instruction was too cursory and did not acknowledge that risk of serious infection constitutes serious bodily injury. We find the instruction submitted to the jury did not misstate or misconstrue the law. We therefore conclude the district court did not err in refusing Parra's jury instruction.
 
 2. Evidentiary rulings
 
 27
 Evidentiary rulings are reviewed for an abuse of discretion and will not be reversed absent a showing of prejudice. Ackley v. Western Conference of Teamsters, 958 F.2d 1463, 1470 (9th Cir.1992).
 
 
 28
 a. Exclusion of the videotape of police dog training
 
 
 29
 The district court excluded a videotape of a police dog attack because its probative value was substantially outweighed by its prejudicial effect. RT at pp. 1526-27. Parra's only claim of prejudice is that he could not use the tape to impeach Planas' testimony that a suspect's typical response to a dog attack is to become submissive. Parra apparently wanted to show that the person on the tape acted inconsistently with Planas' testimony. This assumes that the videotaped response is typical of most suspects. The district court found there was no foundation for such an assumption. Id. at p. 1527. Thus, Parra could not have used the tape to impeach Planas even if it were admitted into evidence for other reasons. Thus, Parra was not prejudiced by the exclusion. We find the district court did not err in excluding the videotape.
 
 
 30
 b. Admission of testimony regarding Parra's prior arrest
 
 
 31
 The district court admitted testimony regarding Parra's prior arrest into evidence because it showed the officers knew, prior to the execution of the arrest warrant, that Parra possessed a gun. RT at p. 77. Parra argues the prejudicial effect of the testimony outweighs its probative value. Parra also claims the district court improperly admitted the evidence for impeachment purposes.
 
 
 32
 Contrary to Parra's assertion, the district court did not admit the evidence for impeachment purposes. Id. Instead, the testimony was admitted to show what the officers knew of Parra prior to the execution of the felony arrest warrant. The evidence bears directly upon the question of whether the officers acted reasonably. We find the district court did not abuse its discretion by admitting the testimony.
 
 
 33
 c. Testimony regarding Parra's drug use the day of the arrest
 
 
 34
 The district court allowed the defendants to admit evidence showing that Parra used a small amount of heroine the day of his arrest, and used marijuana and/or alcohol about twenty minutes before the arrest, because the evidence was relevant to Parra's credibility and to his ability to remember and recollect. RT 28-29. Parra argues the evidence was prejudicial and had no probative value because: (1) the jury would conclude Parra is a bad person because he used drugs; and (2) there was no evidence introduced showing that the drugs impaired Parra's ability to recall.
 
 
 35
 The evidence had probative value because it related to Parra's credibility and ability to remember. The district court noted that because the parties' versions of the events in question differed significantly, determining credibility and ability to recall was important to the jury. Parra suggests the evidence could have had a prejudicial effect on the jury, but makes no argument showing that the prejudicial effect outweighs the evidence's probative value. Accordingly, the district court did not abuse its discretion by admitting the drug use evidence.
 
 3. Bifurcation of the trial
 
 36
 Finally, Parra contends the district court erred by bifurcating the trial such that the first line officers' liability would be determined separately from the determination of the police department's and police chief's liability for maintaining the "bite and hold" policy. Under Rule 42(b), a district court may separate the adjudication of claims "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Fed.R.Civ.P. 42(b). A district court decision to bifurcate a trial is reviewed for abuse of discretion. Exxon Co. v. Sofec, Inc., 54 F.3d 570, 575 (9th Cir.1995).
 
 
 37
 Parra argues it was impossible for the jury to determine whether the officers' actions were reasonable without also considering whether the police department policy condoning those actions was reasonable. The wording of the special verdict obviated this potential problem. The first special verdict stated: "Did defendant Roger Planas (Planas) cause plaintiff Manuel Parra (Parra) to be subjected to unreasonable force during the course of Planas's arrest of Parra on February 14, 1991, in violation of Parra's rights under the Fourth Amendment ...." AER at p. 443. A similar special verdict was submitted for defendant officer Devey. The jury answered "no" to both questions. As constructed, the special verdict form does not allow for the jury to separate any police policy from the particular actions taken by the officers such that the jury could decide the particular actions were reasonable but the policy of using dogs was unreasonable. Instead, the special verdict asked the jury to determine only whether a violation of Parra's Fourth Amendment rights had occurred. Therefore, the construction of the special verdict form avoided any prejudicial effect the bifurcation could have otherwise had in this case. We find the district court was justified in bifurcating the trial.
 
 
 38
 We conclude the district court did not err in making its evidentiary and procedural decisions challenged by Parra on appeal. Therefore, we affirm the district court's denial of Parra's motion for a new trial.
 
 
 39
 AFFIRMED.
 
 
 
 **
 Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Furthermore, Parra cannot maintain his § 1983 claim against LaMaster for training officers to use unreasonable force because the jury found officers Planas and Devey had not used unreasonable force in arresting Parra. See City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (per curiam)
 
 
 [2]
 "[A] peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing the person to be, after having demanded admittance and explained the purpose for which admittance is desired." Cal.Penal Code § 844 (1985)
 
 
 [3]
 In Vera Cruz v. City of Escondido, 126 F.3d 1214 (9th Cir.1997), this court held that under Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1984), "deadly force" means "that force which is reasonably likely to cause death." Id. at p. 12606. Because this was not the definition of "deadly force" used at the time of Parra's trial, the reasonableness of the jury's verdict is evaluated under the prior definition of "deadly force"--force that creates a substantial risk of causing death or serious bodily harm